**Exhibit C**

# SUPERIOR COURT
(Commercial Division)

CANADA
PROVINCE OF QUEBEC
DISTRICT OF MONTREAL

No.:    500-11-063787-242

DATE:  April 30, 2024
_____

**BY  THE HONOURABLE   MARTIN F. SHEEHAN, J.S.C.**
_____

**IN THE MATTER OF THE PLAN OF COMPROMISE OR ARRANGEMENT OF:**

**GOLI NUTRITION INC.**
and
**GOLI NUTRITION INC.**
      Applicants/Debtors

and
**DELOITTE RESTRUCTURING INC.**
      Monitor
_____

**ORDER TERMINATING THE CCAA PROCEEDINGS
AND DISCHARGING THE MONITOR**
_____

[1]    Applicant, Deloitte Restructuring Inc. ("**Deloitte**" or the "**Monitor**"), acting for and on behalf of Residual Co. and Goli Nutrition Inc. ("**Goli US**", and together with Residual Co., the "**Debtors**") seek an Order to terminate the present proceedings (the "**CCAA Proceedings**")

JS1699

| | |
|---|---|
| 500-11-063787-242 | PAGE: 2 |

## **CONTEXT**

[2]    On March 18, 2024, the undersigned issued a First Day Initial Order pursuant to the *Companies' Creditors Arrangement Act*,[1] (the "**CCAA**") which was subsequently amended on March 27, 2024 (the "**Initial Order**")[2].

[3]    The Initial Order provides for:

- 3.1. a stay of all proceedings (the "**Stay**") against Debtors, Goli Nutrition Inc. ("**Goli Canada**") and Goli USA (collectively with Goli Canada "**Goli**") and their respective past, present or future directors and officers until March 28, 2024 (the "**Stay Period**");

- 3.2. the appointment of Deloitte as monitor of the Debtors in the CCAA proceedings and granting the Monitor certain powers;

- 3.3. an Administration Charge and a D&O Charge in amounts sufficient to cover the potential exposure of the beneficiaries of such charges for the initial Stay Period;

- 3.4. a declaration that Québec is the "center of main interest" of the Debtors and, accordingly, an authorization that the Applicants or the Monitor may apply to the Bankruptcy Court for the state of Delaware (the "**US Court**") for orders to recognize and/or assist in carrying out the terms of the Initial Order under Chapter 15 of the United States Bankruptcy Code 11 U.S.C. §§ 101-1532 (the "**U.S. Bankruptcy Code**").

[4]    In its application for the Initial Order, Debtors indicated that they would be proposing a transaction (the "**Contemplated Transaction**") which has two components:

- 4.1. The execution by Goli Canada of an Agency Agreement (the "**Agency Agreement**") with Gordon Brothers Commercial & Industrial, LLC (on behalf of its contractual joint venture with Brandford Auctions, LLC) (the "**Agent**") pursuant to which the Agent shall be engaged for the purpose of proceeding with the orderly liquidation of the Atos Equipment located in the Norco Facility in California (the "**Atos Transaction**" to be approved by way of a "**Liquidation Order**"). Under the Agency Agreement, the Agent provides a minimum net guarantee (the "**Guaranteed Minimum Amount**") consisting of an upfront cash payment with the balance of the Guaranteed Minimum Amount payable following the sale of the Atos Equipment. Any excess balance over the Guaranteed Minimum Amount would be shared between the Agent and the Debtors according to the terms of the Agency Agreement.

---

[1]    *Companies' Creditors Arrangement Act*, R.S.C. 1985, C-36.
[2]    *Arrangement relatif à Goli Nutrition Inc.*, 2024 QCCS 869. Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Initial Order.

    4.2. A reverse vesting order (the "**RVO**" or the "**Principal Transaction**"), comprising of:

        4.2.1. the subscription of shares in Goli Canada by a group that includes Group KPS (a healthcare company), Bastion Capital (an investment management firm) and one of the Debtors' founders (the "**Purchaser**") and effectively acquire 100% of the equity interest in GOLI Canada.

        4.2.2. a transfer or vesting out of Goli Canada of certain excluded assets (including the Atos Equipment and the shares of Goli US), contracts and liabilities to a newly created residual company ("**Residual Co.**") that would replace Goli Canada as a debtor in the CCAA proceedings.

    (the Liquidation Order and the RVO are collectively referred to as the "**Transaction Approval Orders**")

[5] On March 22, 2024, the US Court rendered:

    5.1. a Joint Administration Order, authorizing the administration of the Goli Canada and Goli US proceedings under Chapter 15 within the same case number;

    5.2. a Notice Order approving notification procedure in connection with the Chapter 15 Case; and

    5.3. a Provisional Relief Order granting a stay of proceedings and other protections to Goli Canada and Goli US in the US.

[6] On March 27, 2024, the Court issued an amended and restated Initial Order and extended the Stay Period until June 28, 2024 and increasing the Administration Charge.

[7] The comeback hearing to approve the Contemplated Transaction was scheduled for April 9, 2024 (the "**Transaction Approval Hearing**").

[8] The Contemplated Transaction was designed in consultation with the Monitor following a sale investment solicitation process ("**SISP**") that began in June 2023 and ended in January 2014. It involved the Debtors (via the active involvement of the Debtors' founders and their broader management team), BMO Capital Markets and Goli's principal lenders (the "**Lenders**"). Deloitte acted as a consultant to the Lenders. The SISP process is described in more detail in this Court's prior ruling on the Initial Order as well as in the Monitor's first report dated March 16, 2024 (the "**First Report**").

[9] The SISP failed to generate a binding offer. Five non-binding offers were received but none of these allowed for the repayment in full of the Lenders. All indications of interest only contemplated a partial repayment or a partial assumption of the Lenders' secured debt.

[10]  Eventually the Purchaser submitted an offer for an amount well below the amount owed to the Lenders. After further negotiations, the Contemplated Transaction was reached which is now supported by the Lenders.

[11]  On April 8, 2024, the Monitor issued its second report to the Court (the "**Second Report**"), supporting the Debtors' request for the issuance of the Transaction Approval Orders.

[12]  April 8, 2024, Sharon and Odelya Hoffman and certain related entities, including Vitamin Friends LLC, RGL Management LLC, RGL Holdings LLC, and Triple 5 Nutrition LLC (collectively, the "**Hoffman Parties**") filed an opposition to the issuance of the Liquidation Order, alleging proprietary rights in part of the Atos Equipment (the "**Alleged RGL Equipment**").

[13]  On April 9, 2024, the Transaction Approval Hearing proceeded, and the Court issued the RVO with reasons to follow. The Transaction Approval Hearing with respect to Liquidation Order was postponed to April 11, 2024. That day, despite the Hoffman Parties' objection, the Court issued an order approving the Liquidation Order and issued its reasons for the RVO and the Liquidation Order (the "**Transaction Approval Judgment**").

[14]  Pursuant to the Transaction Approval Judgment, the Court scheduled a hearing on April 30, 2024, to adjudicate any claim the Hoffman Parties may assert regarding the liquidation proceeds resulting from the sale of the Atos Equipment as well as any related claims of the Monitor, including for the retroactive payment of expenses related to the Atos Equipment (the "**Hoffman Hearing**"). At the same time, the Court amended and restated the Initial Order to grant the Monitor additional powers upon the closing of the Principal Transaction to implement the Atos Transaction.

[15]  On April 15, 2024, the Monitor sought the recognition and enforcement of the Transaction Approval Orders before the US Court (the "**Recognition Hearing**"). At the Recognition Hearing, the Hoffman Parties objected to the sale of part of the Atos Equipment, including additional items not initially identified as Alleged RGL Equipment. They argued that their claim for proprietary rights in the Alleged RGL Equipment should be determined by the US Court.

[16]  On April 18, 2024, the US Court rendered a Bench Ruling (the "**Bench Ruling**") with reasons following on April 22, 2024, recognizing and enforcing the CCAA Proceedings as foreign main proceedings under Chapter 15 thus giving full force and effect to the Initial Order and the RVO in the US. However, the US Court concluded that the Hoffman Parties' proprietary claims should be determined by this Court before the US Court could approve the Liquidation Order. In essence, the US Court decided that the motion to recognize and enforce the Liquidation Order should be held in abeyance until a decision could be rendered on the ownership claims of the Hoffman Parties. As a hearing had already been scheduled in Canada for April 30, 2024, it agreed that the matter could be dealt with by this Court.

500-11-063787-242                                                                                               PAGE: 5

[17]   On April 19, 2024, the Hoffman Parties notified their application asserting proprietary claims over the Alleged RGL Equipment. They alleged proprietary rights over approximately 533 items of Atos Equipment up from the 41 items identified at the Transaction Approval Hearing.

[18]   The Principal Transaction closed on April 24, 2024. Residual Co. replaced Goli Canada in the CCAA Proceedings.

[19]   As indicated in the Monitor's cash flow forecasts annexed to the First and Second Reports, the Agency Agreement (and specifically the payment of the Guaranteed Minimum Amount) was the principal source of funding for the second phase of the restructuring. Indeed, Goli Canada's revenue-generating activities have been transferred to the Purchaser as part of the RVO.

[20]   In the absence of an order enforcing the Liquidation Order in the United States, the Debtors were not able to access this funding. Thus, they are incurring expenses related to the Atos Equipment (including rent for the Norco Facility and insurance, the "**Atos Expenses**") without having the financial capacity to pay for them.

[21]   Discussions between the Hoffman Parties, the Lenders and the Debtors to reach an agreement, were not fruitful. No other financing alternative has been identified which would allow the Debtors to pay the Atos Expenses and the professionals involved in the CCAA Proceedings. Given the Hoffman Parties' contestation in Canada and the United States, these professional expenses are higher than what was initially anticipated.

[22]   The Agency Agreement was conditional on the issuance of the Liquidation Order as well as an order in a form satisfactory to the parties recognizing and enforcing such order in the US prior to April 19, 2024. This condition was not met and thus the Agency Agreement is now expired. In any event, the Lenders, who were most susceptible to benefit from the Atos Transaction are no longer willing to finance the process to have it approved.

[23]   The Debtors are now unable to meet their obligations as they come due or to support the costs associated with the realization of the Atos Equipment in the context of the CCAA CCAA Proceedings. Unpaid Atos Expenses exceed 187 000 $.

[24]   On April 25, 2024, the Monitor advised the Court and parties on the Service List that it intended to seek the termination of the CCAA Proceedings on April 30, 2024, and that it did not intend to proceed with the adjudication of the Hoffman Parties' claims at the Hoffman Hearing.

**ANALYSIS**

[25]   The conclusion of the Principal Transaction allows the preservation of Goli's activities for the general benefit of the stakeholders.

[26]   However, the second phase of the Contemplated Transaction regarding the realization of the Atos Equipment no longer appears feasible given the Atos Expenses, the costs associated with maintaining the CCAA Proceedings and the absence of available interim funding.

[27]   The Court agrees with the Monitor that, under such circumstances, the continuation of the CCAA Proceedings is no longer viable.

[28]   The application was notified to the Service List. No one has contested the relief sought. Goli US, Residual Co. and the Lenders support the application.

[29]   Thus, an order to terminate the CCAA Proceedings is appropriate.

[30]   As such, Residual Co. and Goli US will emerge from CCAA protection as of the date of this order (the "**CCAA Termination Date**"). The Hoffman Parties' motion will be struck, without prejudice.

[31]   While, the Hoffman Parties' claims remain contested by Goli, Residual Co. and the Lenders, the removal of the protections included in the Initial Order will allow any parties with interests in the Atos Equipment, including the Hoffman Parties, the Lenders, or others to exercise their rights and remedies as against Residual Co. in accordance with applicable procedures.

[32]   The D&O Charge should be released as of the CCAA Termination Date. The Administration Charge should be released upon filing of a certificate by Deloitte confirming that beneficiaries of the charge have been paid.

[33]   The Monitor also seeks confirmation that, effective as of the CCAA Termination Date, Deloitte will be discharged in its capacity as Monitor but will continue to benefit from the protections afforded to it by the CCAA and previous orders of this Court. Such an order is warranted here.

[34]   Finally, the Monitor asks that it and its counsel be fully released from all liability in connection with its role in the CCAA Proceedings. The proposed terms of the releases are somewhat broad.

[35]   The Court has no reason to doubt that the Monitor has, in good faith, duly and properly discharged and performed its duties and obligations in the CCAA Proceedings.

[36]   This being said, it is difficult for this Court to grant a release: i) for actions or factual circumstances that the Court is not aware of; or ii) which would bind parties who have not had a chance to make their position known as potential issues remain unknown to them.

[37]   The Initial Order already provides that "no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor, or the

carrying out the provisions of any order of this Court, except with prior leave of this Court". The present order maintains this protection.

[38]   Furthermore, the Monitor's Reports as well as actions and conduct of the Monitor in connection with the CCAA Proceedings have been approved.

[39]   Finally, the Monitor already benefits from certain specific statutory releases under the CCAA[3] including for loss or damage resulting from reliance by others on its reports prepared in good faith with reasonable care.

[40]   As Justice Shrager observed in *Aveos* (when he was at the Superior Court), it should not, as a matter of policy, be viewed "as a negative that professionals such as a monitor know that they are potentially liable for negligent acts. While the vast majority of monitors behave in a professional and prudent matter, the deterrence of potential liability is a great motivation to continue such professional and prudent conduct"[4].

[41]   In any event, as some authors have noted, the "potential for liability of a monitor appears to be very limited within the CCAA framework. While the *Aveos* decision may suggest that there remains a limited exposure to potential proceedings against a monitor after a proper discharge has been granted, past experience would indicate that this risk may well be only hypothetical."[5]

[42]   Nonetheless, third-party releases in favor of monitors and their professional advisors have been approved by this court in other cases involving RVO transactions.[6]

[43]   As such, a release will be granted but it will be limited to actions approved by this Court.

**FOR THESE REASONS, THE COURT:**

[44]   **GRANTS** the Application.

[45]   **STRIKES** the Hoffman Parties' Motion to Determine Ownership of Property and other Related Relief, without prejudice;

---

[3]   See for example sections 11.8(1), 11.8(2) and 23(2) of the CCAA.
[4]   *Aveos Fleet Performance Inc./Aveos Performance aéronautique inc. (Arrangement relatif à)*, 2013 QCCS 5924, para. 34.
[5]   Sylvain RIGAUD and Toni VANDERLAAN, "Much ado about nothing: the AVEOS decision on discharge of CCAA monitors", (2013-2014) 26 Comm. Insolv. R. 40-44 at p. 43.
[6]   *Arrangement relatif à Blackrock Metals Inc.*, 2022 QCCS 2828, para. 128.

## SERVICE

[46] **ORDERS** that any prior delay for the presentation of this Application is hereby abridged and validated so that the Application is properly returnable today and **DISPENSES** with further service thereof.

[47] **PERMITS** the service of this Order at any time and place and by any means whatsoever.

## DEFINITIONS

[48] **DECLARES** that, unless otherwise indicated, capitalized terms found herein shall have the meanings ascribed thereto in the Initial Order.

## TERMINATION OF CCAA PROCEEDINGS

[49] **ORDERS** that as of the date of this Order, the CCAA Proceedings shall be terminated without any other act or formality (the "**CCAA Termination Date**"), save and except as provided for in this Order, and provided that nothing herein impacts the validity of any Orders made in the CCAA Proceedings or any actions or steps taken by any Person.

[50] **AUTHORIZES** the Monitor, following the CCAA Termination Date, to disburse the Professional Costs Budget Amount (as defined in the Subscription Agreement) to pay outstanding professional or other fees, expenses and disbursements incurred by the Monitor, the Monitor's counsel and the Syndicated Lenders' counsel in connection with the CCAA Proceedings and the proceedings under the Chapter 15 of the U.S. Bankruptcy Code with regard to the Debtors (the "**Chapter 15 Case**"), the whole in accordance with the Subscription Agreement.

## CCAA CHARGES

[51] **ORDERS** that, as of the CCAA Termination Date, the Directors' Charge, be terminated, discharged and released as against any Property to which it applies without any further formality and that the Administration Charge shall remain in full force and effect until terminated, discharged and released in accordance with this Order.

[52] **ORDERS** that upon the issuance of a certificate substantially in the form attached to this Order as Schedule "A" (the "**Discharge Certificate**"), to be issued once the beneficiaries of the Administration Charge have been fully paid the amounts secured by such CCAA Charge, the Administration Charge shall be terminated, discharged and released as against any Property to which it applies without any further formality.

500-11-063787-242                                                                                                          PAGE: 9

## CONDUCT AND DISCHARGE OF THE MONITOR

[53]  **DECLARES** that, to the Court's knowledge, the Monitor has satisfied all of its obligations under the CCAA and the Orders rendered in the CCAA Proceedings up to and including the date of this Order.

[54]  **ORDERS** that all of the Monitor's reports filed with this Court (the "**Monitor's Reports**") be and are hereby approved that all actions and conduct of the Monitor in connection with Goli and the Debtors (the "**CCAA Parties**") and the CCAA Proceedings, including the actions and conduct of the Monitor disclosed in the Monitor's Reports, are hereby approved.

[55]  **DISPENSES** the Monitor from filing any further reports, including any reports which may be required by section 23 of the CCAA.

[56]  **DECLARES** that the protections afforded to Deloitte Restructuring Inc. ("**Deloitte**"), as Monitor and as officer of this Court pursuant to the terms of the Initial Order and any other Orders made in the CCAA Proceedings shall not expire or terminate on the CCAA Termination Date and, subject to the terms hereof, shall remain effective and in full force and effect.

[57]  **ORDERS** that effective at the CCAA Termination Date, Deloitte shall be discharged and relieved from any further obligations, liabilities, responsibilities and duties, in its capacity as Monitor of the CCAA Parties under the CCAA and the orders made in the CCAA Proceedings, and that Deloitte shall have no further obligations, responsibilities or duties as Monitor from and after the CCAA Termination Date.

[58]  **ORDERS** that, notwithstanding the discharge of Deloitte as Monitor, Deloitte shall have the authority but not the obligation to carry out, complete or address any matters in the capacity of Monitor that are contemplated in this Order or ancillary or incidental to the CCAA Proceedings following the CCAA Termination Date, as may be required in the opinion of the Deloitte.

[59]  **ORDERS** that, notwithstanding the Monitor's discharge and the termination of the CCAA Proceedings, nothing herein shall affect, vary, derogate from, limit or amend any of the rights, approvals, releases and protections afforded to Deloitte pursuant to the CCAA, at law and/or under all Orders made in the CCAA Proceedings and that Deloitte shall continue to benefit from any such rights, approvals, releases, and protections, including in connection with any actions taken pursuant to this Order following the CCAA Termination Date.

## RELEASE

[60]  **ORDERS** that as of the CCAA Termination Date the Monitor and its legal counsel are released from any and all liability arising out of actions performed in furtherance of Orders of this Court in connection with the CCAA Proceedings. Entities and persons

| | |
|---|---|
| 500-11-063787-242 | PAGE: 10 |

related to the Monitor or belonging to the same group as the Monitor will also benefit from the protection afforded by this paragraph.

**AGENCY AGREEMENT**

[61]  **DECLARES** that the Agency Agreement among Gordon Brothers Commercial & Industrial, LLC (on behalf of its contractual joint venture with Branford Auctions, LLC) and GOLI Canada, with the intervention of GOLI USA, approved pursuant to the Liquidation Order rendered by this Court in these proceedings on April 11, 2024, is terminated as the conditions precedent were not satisfied on or before April 19, 2024.

**GENERAL PROVISIONS**

[62]  **DECLARES** that this Order shall have full force and effect in all provinces and territories in Canada and that all Orders made in the CCAA Proceedings shall continue in full force and effect in accordance with their respective terms, except to the extent that such Orders are varied by, or inconsistent with, this Order or any further Order of this Court.

[63]  **ORDERS** that Deloitte may apply to this Court for advice and direction in connection with this Order and, as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement this Order.

[64]  **REQUESTS** the aid and recognition of any court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America, including the United States Bankruptcy Court for the District of Delaware, and any court or administrative body elsewhere, to act in aid and to be complementary to this Court in carrying out the terms of the Order.

[65]  **AUTHORIZES** Deloitte, in its capacity as foreign representative of the Debtors and notwithstanding the termination of the CCAA Proceedings, to apply for (i) the recognition and enforcement of this Order in the United States of America, including in the Chapter 15 Case, as well as (ii) for an order of termination of the Chapter 15 Case.

[66]  **ORDERS** the provisional execution of the present Order notwithstanding any appeal and without the requirement to provide any security or provision for costs whatsoever.

[67]  **THE WHOLE** without costs.

_____
MARTIN F. SHEEHAN, J.S.C.

500-11-063787-242                                                                        PAGE: 11

Mtre Christian Lachance
**DAVIES WARD PHILLIPS & VINEBERG LLP**
Attorneys for the Debtors

Mtre Noah Zucker
Mtre Charlotte Dion
**NORTON ROSE FULBRIGHT CANADA S.E.N.C.R.L.,S.R.L.**
Attorneys for the Monitor

Mtre Ilia Kravtsov
**OSLER, HOSKIN & HARCOURT LLP**
Attorneys for the Lenders

Mtre Jonathan Bashir-Legault
Attorney for the Canadian Revenue Agency

Mtre Nick Scheib
Attorney for Mr. Michael Betinsky

Mtre Joshua Bouzaglou
**WOODS LLP**
Attorneys for the Hoffman Parties

Mtre Mélanie Martel
**DLA PIPER (CANADA) LLP**
Attorneys for DLA Piper (US) LLP

Mtre François Alexandre Toupin
**MCCARTHY TÉTRAULT S.E.N.C.R.L., S.R.L.**
Attorneys for Saddle Ranch APG LLC

Hearing date:          April 30, 2024

500-11-063787-242  PAGE: 12

**SCHEDULE "A"**
**DRAFT CERTIFICATE OF THE MONITOR**

| | |
|---|---|
| **CANADA**<br>**PROVINCE OF QUEBEC**<br>**DISTRICT OF MONTRÉAL**<br><br>**File: No: 500-11-063707-242** | **S U P E R I O R  C O U R T**<br>Commercial Division<br><br>**15938759 CANADA INC. (RESIDUAL CO.)**<br><br>-and-<br><br>**GOLI NUTRITION INC.**<br>Debtors<br><br>-and-<br><br>**DELOITTE RESTRUCTURING INC.**<br>Monitor |

**CERTIFICATE OF THE MONITOR**

**RECITALS:**

**WHEREAS** the Superior Court of Québec (Commercial Division) (the **Court**) issued an Initial Order rendered by this Court on March 18, 2024, as amended and restated on March 27 and April 11, 2024 (the "**Initial Order**");

**WHEREAS** the Court issued an Order dated April 30, 2024, among other things, (i) terminating the CCAA Proceedings; (ii) approving the Monitor's activities and (iii) discharging and releasing the Monitor from its duties and obligations in relation to the CCAA Proceedings.

**WHEREAS** unless otherwise indicated, capitalized terms used herein have the meanings given in the Initial Order.

500-11-063787-242    PAGE: 13

**THE MONITOR CERTIFIES THE FOLLOWING:**

(a)   The beneficiaries of the Administration Charge have confirmed to the Monitor that all amounts owed to them that are secured by the Administration Charge have been paid in full.

**(b)**   This Certificate was issued by the Monitor at ____ **[TIME]** on _____ **[DATE].**

Deloitte Restructuring Inc. in its capacity as Court-appointed Monitor, and not in its personal capacity.

**Name:**
_____
**Title:**
_____