**Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re:                                                  :   Chapter 15
                                                        :
COPPER PULSE INC.,[1]                                   :   Case No. 24-10438 (LSS)
                                                        :
            Debtor in a Foreign Proceeding.             :   Obj. Deadline: June 3, 2024 at 4:00 p.m. (ET)
                                                        :   Hearing Date: June 12, 2024 at 2:30 p.m. (ET)
------------------------------------------------------- x
```

### PETITIONER'S FINAL REPORT AND MOTION FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING TERMINATION ORDER, (II) CLOSING THE CHAPTER 15 CASE (III) GRANTING RELATED RELIEF

Deloitte Restructuring Inc., in its capacity as the duly authorized foreign representative (in such capacity, the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of Copper Pulse Inc. (f/k/a Goli Nutrition Inc.), a company incorporated in Delaware (the "Debtor"), through its United States co-counsels, Landis Rath & Cobb LLP and Norton Rose Fulbright US LLP, respectfully submits this final report (the "Final Report") and motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) recognizing the *Order Termination the CCAA Proceeding and Discharging the Monitor* entered, (ii) closing the Debtor's Chapter 15 Case and (iii) granting related relief. In support thereof, the Petitioner respectfully states as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 109 and 1501, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

---

[1] The Debtor in this Chapter 15 case and the last four digits of its federal tax identification number is: Copper Pulse Inc. (f/k/a Goli Nutrition, Inc.) (2655). The Debtor is managed from its corporate headquarters, which is located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada.

2.      Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

3.      The statutory bases for the relief requested herein are sections 105, 350(a), 1517(d), 1518(1), 1521 and 1522 of the Bankruptcy Code, rule 5009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 5009-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

4.      The Petitioner confirms its consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f) to the entry of final orders or judgments by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.      Venue in this district is proper under 28 U.S.C. § 1410.

**FINAL REPORT**

6.      On March 19, 2024 (the "Petition Date"), the Petitioner commenced this Chapter 15 Case and a chapter 15 case for Goli Nutrition Inc., a company incorporated in Quebec, Canada ("Goli Canada"), as ancillary proceedings to the Canadian Proceedings pursuant to sections 1504, 1509 and 1515 of the Bankruptcy Code.

7.      A complete description of the events leading to the filing of the Canadian Proceedings are set forth in the Petition.

8.      On March 15, 2024, the Debtor filed an application (the "CCAA Initial Application") with the Superior Court of Québec, sitting in the Commercial Division for the district of Montréal (the "Canadian Court") pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") seeking the entry of an initial order (the

"Initial Order").  Pursuant to the Initial Order, which was issued by the Canadian Court on March 18, 2024, the Petitioner was appointed as monitor in the Canadian Proceedings and was authorized to apply to act as the "foreign representative" of the Debtor and Goli Canada in connection with seeking cross-border approval of the Canadian Proceedings pursuant to Chapter 15 of the Bankruptcy Code.

9.      On the Petition Date, the Petitioner filed *Petitioner's Verified Petition Under Chapter 15 for Recognition of the Canadian Proceedings and Request for Related Relief* (the "Verified Petition") [D.I. 2] requesting entry of an order granting recognition of the Canadian Proceedings.[2]

10.     Also on the Petition Date, the Petitioner filed *Petitioner's Motion for Entry of an Order (I) Recognizing and Enforcing the RVO and the Atos Sale Order, (II) Approving the Sale Transactions Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief* (the "Sale Motion") [D.I. 7] seeking entry of an order recognizing and enforcing the RVO and Atos Sale Order in the United States.

11.     Following a hearing in the Canadian Proceedings held on April 9, 2024, the Canadian Court entered the *Approval and Reverse Vesting Order* (as rectified on April 17, 2024, the "RVO") approving the transactions contemplated under the Subscription Agreement.  On April 11, 2024, following a hearing in the Canadian Proceedings held on that date, the Canadian Court entered the *Liquidation Order* approving the Agency Agreement and sale of the Atos Equipment (the "Atos Sale Order").

12.     This Court held a hearing on April 15, 2024 to consider, among other things, recognition of the Canadian Proceedings and the relief requested in the Sale Motion.

---

[2] Capitalized terms used but not defined here shall have the meanings ascribed to them in the Verified Petition or Sale Motion (defined below), as applicable.

13.     On April 18, 2024, the Court entered the *Final Order Granting Recognition of Foreign Main Proceedings and Certain Related Relief* [D.I. 85] (the "Recognition Order") granting the Verified Petition and recognizing the Canadian Proceedings as foreign main proceedings pursuant to Bankruptcy Code section 1517.

14.     At a hearing held on April 18, 2024, the Court issued its ruling on the Sale Motion. As set forth in the *Bench Ruling* [D.I. 90], the Court ruled that it would recognize and enforce the RVO but that it will hold the Sale Motion as it relates to the Atos Equipment in abeyance until the Canadian Court renders a decision with respect to ownership of certain of the Atos Equipment.

15.     On April 22, 2024, the Court entered the *Order Recognizing and Enforcing the RVO and Related Relief* [D.I. 88] (the "Enforcement Order").

16.     Following the closing of the RVO transaction, the Court entered the *Order (I) Closing Chapter 15 Case of Goli Nutrition Inc. (Canada), Case No. 24-10438 (LSS) and (II) Amending the Case Caption of Case No. 24-10439 (LSS)* [D.I. 92] on April 29, 2024 closing the Chapter 15 case of Goli Canada.

17.     In the absence of an order recognizing and enforcing the Atos Sale Order in the United States, the Debtors were unable to access the funding under the Agency Agreement that would have provided necessary liquidity to pursue the second phase of their restructuring process. Given the expiration of the Agency Agreement on April 19, 2024, the inability to proceed with the Atos Sale on the original terms or on alternative acceptable terms, and the absence of other sources of funding, Residual Co. and Goli US were unable to meet their ongoing obligations or to support the costs associated with the realization of the Atos Equipment in the context of the Canadian Proceedings.

18.     Accordingly, on April 26, 2024, the Debtors filed the *Application to terminate the CCAA Proceedings and Discharge the Monitor* (the "Termination Application"), a copy of which is attached hereto as **Exhibit B**, with the Canadian Court seeking entry of an order terminating the Canadian Proceedings and the approval of the Monitor's activities and its discharge and release from its duties and obligations in relation therewith.

19.     On April 30, 2024, the Canadian Court entered the Termination Order, attached hereto as **Exhibit C**, bringing to a close the Canadian Proceedings.

20.     To the knowledge of the Petitioner, and based on the foregoing, all matters to be attended to in connection with this Chapter 15 Case have been completed. Accordingly, the Petitioner now seeks entry of the Proposed Order closing this Chapter 15 Case and enforcing the Termination Order entered by the Canadian Court in the United States.

21.     The foregoing serves as the Petitioner's Final Report as required pursuant to Bankruptcy Rule 5009(c).

## RELIEF REQUESTED

22.     By this Motion, the Petitioner respectfully seeks the entry of the Proposed Order finding that the Chapter 15 Case is fully administered, closing the Chapter 15 Case without prejudice pursuant to sections 105, 350, 1517(d) and 1518(1) of the Bankruptcy Code, Bankruptcy Rule 5009(c), and Local Rule 5009-2, and recognizing the Termination Order pursuant to section 1521 of the Bankruptcy Code.

## BASIS FOR RELIEF

### A.     The Chapter 15 Case is Complete and Closing this Case is Appropriate.

23.     Section 1517(d) of the Bankruptcy Code provides that "[a] case under this chapter [15] may be closed in the manner prescribed under section 350." 11 U.S.C. § 1517(d). Pursuant

to section 350 of the Bankruptcy Code, a bankruptcy case may be closed "[a]fter an estate is fully administered." 11 U.S.C. § 350(a).  Bankruptcy Rule 5009(c) provides:

> A foreign representative in a proceeding recognized under § 1517 of the Code shall file a final report when the purpose of the representative's appearance in the court is completed.  The report shall describe the nature and results of the representative's activities in the court.  The foreign representative shall transmit the report to the United States trustee, and give notice of its filing to the debtor, all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor was a party at the time of the filing of the petition, and such other entities as the court may direct.  The foreign representative shall file a certificate with the court that notice has been given.  ***If no objection has been filed by the United States trustee or a party in interest within 30 days after the certificate is filed, there shall be a presumption that the case has been fully administered.***

Fed. R. Bankr. P. 5009(c) (emphasis added).  Pursuant to Local Rule 5009-2, "a foreign representative . . . may seek the entry of a final decree when the purpose of the representative's appearance in the Court is completed . . . ." Del. Bankr. L.R. 5009-2.

24.     As of the date hereof, the Petitioner has fulfilled the purposes of its appearance before this Court in connection with the Chapter 15 Case.  There are no outstanding motions, contested matters or adversary proceedings.  Further, the Canadian Court has terminated the Canadian Proceedings.  Based on the foregoing, the Petitioner has determined that it no longer requires the assistance of this Court in connection with the administration of the Canadian Proceedings.

25.     The Petitioner expects no objection from the Office of the United States Trustee for the District of Delaware or otherwise within the 30-day period mandated by Bankruptcy Rule 5009(c) and Local Rule 5009-2(a).  If no objection is filed, Bankruptcy Rule 5009(c) and Local Rule 5009-2(a) will create a presumption that the Chapter 15 Case has been fully administered, and permit the Court to close the Chapter 15 Case.

26.     Finally, section 105 of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

27.     As detailed herein, the purpose of the Petitioner's appearance in this Court has been completed, and this Chapter 15 Case has been fully administered. The Final Report also details the nature and results of the representative's activities in this Court, thereby satisfying Bankruptcy Rule 5009(c) and Local Rule 5009-2(a).

28.     Accordingly, the Petitioner submits that it is appropriate for the Court to enter an order closing the Chapter 15 Case, effective upon entry of such order.

**B.      Recognizing the Termination Order is Appropriate**

29.     Recognizing the Termination Order is appropriate in this case. Section 1521(a) of the Bankruptcy Code authorizes this Court, "at the request of the foreign representative, [to] grant any appropriate relief." 11 U.S.C. § 1521(a). The Court may grant such relief so long as it is not "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.  Relief is permitted under section 1522 of the Bankruptcy Code so long as "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a). The Termination Order provides for customary relief, including discharging the Monitor from its duties and exculpating the Monitor in relation to its work in the Canadian Proceedings, except for liabilities or obligations arising from breach of its duties to act honestly and in good faith. Accordingly, the relief provided by the Termination Order is consistent with, and not contrary to United States public policy, including the policy of providing customary court-ordered exculpation for estate fiduciaries.

## NOTICE AND NO PRIOR REQUEST

30.     The Petitioner will serve this Final Report and Motion on (a) the United States

Trustee, (b) the Debtor, (c) all creditors who have filed a request for notice under Bankruptcy Rule

2002 and Local Rule 9013-1, (d) all persons or bodies authorized to administer foreign proceedings

of the Debtor, (e) all parties to litigation pending in the United States in which the Debtor was

party at the time of the filing of the Debtor's petition, (f) and such other entities as the court has

directed.

31.     No prior request for relief sought in this Motion has been made to this or any other

court.

WHEREFORE, the Petitioner respectfully requests that this Court enter an order,

substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and

such other relief as may be just and proper.

Dated:  May 3, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Matthew B. McGuire (No. 4366)
Matthew R. Pierce (No. 5946)
Joshua B. Brooks (No. 6765)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: mcguire@lrclaw.com
       pierce@lrclaw.com
       brooks@lrclaw.com

-and-

**NORTON ROSE FULBRIGHT US LLP**
Andrew Rosenblatt (admitted *pro hac vice*)
Francisco Vazquez (admitted *pro hac vice*)
Michael Berthiaume (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
Email: andrew.rosenblatt@nortonrosefulbright.com
francisco.vazquez@nortonrosefulbright.com
michael.berthiaume@nortonrosefulbright.com

*Counsel to the Petitioner*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------ x

| | |
|---|---|
| In re: | : Chapter 15 |
| | : |
| COPPER PULSE INC.,[1] | : Case No. 24-10438 (LSS) |
| | : |
| Debtor in a Foreign Proceeding. | : **Obj. Deadline: June 3, 2024 at 4:00 p.m. (ET)** |
| | : **Hearing Date: June 12, 2024 at 2:30 p.m. (ET)** |
| | : |

------------------------------------------------------ x

## NOTICE OF MOTION

TO:     (a) the United States Trustee, (b) the Debtor, (c) all creditors who have filed a request for notice under Bankruptcy Rule 2002 and Local Rule 9013-1, (d) all persons or bodies authorized to administer foreign proceedings of the Debtor, (e) all parties to litigation pending in the United States in which the Debtor was party at the time of the filing of the Debtor's petition, (f) and such other entities as the Court has directed.

**PLEASE TAKE NOTICE** that Deloitte Restructuring Inc., in its capacity as the court-appointed monitor and duly authorized foreign representative (in such capacity, the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of Goli Nutrition Inc., a company incorporated in Québec, Canada, and Goli Nutrition Inc., a company incorporated in Delaware (collectively the "Debtors"), in the above-captioned chapter 15 cases has filed the *Petitioner's Final Report and Motion for Entry of an Order (I) Recognizing and Enforcing Termination Order, (II) Closing the Chapter 15 Case, and (III) Granting Related Relief* (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to entry of an order approving the Motion to Seal must be filed on or before **June 3, 2024 at 4:00 p.m. (ET)** (the "Objection Deadline") with the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801. At the same time, you must serve a copy of the objection upon the proposed counsel to the Petitioner.

A HEARING ON THE MOTION WILL BE HELD ON JUNE 12, 2024 AT 2:30 P.M. (ET) BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN, IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 NORTH MARKET STREET, 6TH FLOOR, COURTROOM NO. 1, WILMINGTON, DELAWARE 19801.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

---

[1] The Debtor in this Chapter 15 case and the last four digits of its federal tax identification number is: Copper Pulse Inc. (f/k/a Goli Nutrition, Inc.) (2655). The Debtor is managed from its corporate headquarters, which is located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada.

Dated:  May 3, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Matthew B. McGuire (No. 4366)
Matthew R. Pierce (No. 5946)
Joshua B. Brooks (No. 6765)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: mcguire@lrclaw.com
       pierce@lrclaw.com
       brooks@lrclaw.com

-and-

**NORTON ROSE FULBRIGHT US LLP**
Andrew Rosenblatt (admitted *pro hac vice*)
Francisco Vazquez (admitted *pro hac vice*)
Michael Berthiaume (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
Email: andrew.rosenblatt@nortonrosefulbright.com
francisco.vazquez@nortonrosefulbright.com
michael.berthiaume@nortonrosefulbright.com

*Counsel to the Petitioner*

**<u>Exhibit A</u>**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x

In re:                            :   Chapter 15

:

COPPER PULSE INC.,[1]         :   Case No. 24-10438 (LSS)

:

      Debtor in a Foreign Proceeding.  :  **Ref. No.**

:

-------------------------------------------------------- x

## ORDER (I) CLOSING CHAPTER 15 CASE AND
## (II) RECOGNIZING THE TERMINATION ORDER

Upon consideration of the motion (the "Motion")[2] of Deloitte Restructuring Inc., in its capacity as the court-appointed monitor and duly authorized foreign representative (in such capacity, the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of the above-captioned debtor (the "Debtor"), pursuant to sections 105, 350(a), 1517(d), 1518(1), 1521 and 1522 of the Bankruptcy Code, Rule 5009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 5009-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order closing the Debtor's Chapter 15 case (the "Chapter 15 Case") and recognizing the Termination Order; and upon consideration of the Final Report and the Certification of No Objection; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (b) this matter is a core proceeding within the meaning

---

[1] The Debtor in this Chapter 15 case and the last four digits of its federal tax identification number is: Copper Pulse Inc. (f/k/a Goli Nutrition, Inc.) (2655). The Debtor is managed from its corporate headquarters, which is located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

of 28 U.S.C. § 157(b)(2), and (c) notice of the Motion was due and proper under the circumstances; and it appearing that the relief requested in the Motion is in the best interest of the Debtors, their creditors and other parties-in-interest; and after due deliberation, and good and sufficient cause appearing therefor:

IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1.      The Motion is GRANTED as set forth herein.

2.      The Final Report is approved.

3.      The Chapter 15 Case is hereby closed.

4.      This Order is without prejudice to the rights of any party to seek to reopen the Chapter 15 Cases for cause pursuant to section 350(b) of the Bankruptcy Code.

5.      Any orders heretofore entered by this Court in the Chapter 15 Case shall survive the entry of this Order.

6.      The clerk of this Court shall enter this Order on the docket of the Chapter 15 Case and the docket shall be marked as "Closed."

7.      The Termination and Discharge Order entered in the Canadian Proceeding is hereby recognized in its entirety and given full force and effect in the territorial jurisdiction of the United States.

8.      Notwithstanding anything to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.      This Court shall retain jurisdiction with respect to its prior orders in the Chapter 15 Case, the enforcement, amendment or implementation of this Order or requests for any additional relief in or related to the Chapter 15 Case.

Dated: _____, 2024        _____
Wilmington, Delaware                 THE HONORABLE LAURIE SELBER SILVERSTEIN
                                     UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**CANADA**
**PROVINCE OF QUÉBEC**
**DISTRICT OF MONTRÉAL**

**S U P E R I O R   C O U R T**
(Commercial Division)

(Sitting as a court designated pursuant to the *Companies' Creditors Arrangement Act*, RSC 1985, c. C-36)

No.:    500-11-063787-242

**IN THE MATTER OF THE COMPROMISE OR ARRANGEMENT OF:**

**15938759 CANADA INC. (RESIDUAL CO.)**

-and-

**GOLI NUTRITION INC.**

Debtors

**DELOITTE RESTRUCTURING INC.**

Monitor/Applicant

**APPLICATION TO TERMINATE THE CCAA PROCEEDINGS
AND DISCHARGE THE MONITOR**

TO THE HONOURABLE JUSTICE MARTIN F. SHEEHAN OF THE SUPERIOR COURT, SITTING IN AND FOR THE COMMERCIAL DIVISION OF THE DISTRICT OF MONTRÉAL, THE APPLICANT RESPECTFULLY STATES AS FOLLOWS:

**I.      INTRODUCTION**

1.      By the present application (this **Application**), the Applicant/Monitor, Deloitte Restructuring Inc. (**Deloitte** or the **Monitor**), acting for and on behalf of Residual Co. and Goli Nutrition Inc. (**Goli US**, and together with Residual Co., the **Debtors**) pursuant to the initial order dated March 18, 2024 (as amended and restated on March 27, 2024 and April 11, 2024, the **Initial Order**), seeks the issuance of an order substantially in the form of the draft order communicated herewith as **Exhibit R-1** (the **Proposed Termination Order**), providing for:

      a)      the termination of the present proceedings (the **CCAA Proceedings**) under the *Companies' Creditors Arrangement Act* (**CCAA**);

      b)      the approval of the Monitor's activities and its discharge and release from its duties and obligations in relation to the CCAA Proceedings; and

      c)      certain ancillary relief.

2.      All capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Initial Order.

3.      While, the Principal Transaction (as defined below) has been approved and implemented and has allowed for the preservation of the business (the **Business**) formerly operated by Goli Nutrition Inc. (**Goli Canada**), the Debtors no longer have the necessary funding to pursue the second phase of the restructuring initially contemplated in these CCAA Proceedings, namely with respect to the Atos Transaction (as defined below).

4.      The Monitor has fully performed its duties under the CCAA and the orders of this Court to the furthest extent possible, and respectfully submits that the relief contemplated in the Proposed Termination Order is necessary and appropriate in the circumstances.

5.      The Monitor has prepared a report in support of this Application (the **Third Report**), which will be notified prior to the hearing of this Application.

**II.     BACKGROUND**

**A.     Developments in the CCAA Proceedings**

6.      On March 15, 2024, Goli Canada and Goli US filed an *Application for the Issuance of a First Day Initial Order, an Amended and Restated Initial Order and Other Relief, including the Approval of a Transaction and an Agency Agreement* (the **Initial Application**) seeking, *inter alia*, (i) a declaration that Goli Canada and Goli US are corporations to which the CCAA applies, (ii) a stay of all proceedings against the Goli Canada and Goli US and the Directors, for an initial period of ten days, and (iii) the appointment of Deloitte as Monitor to Goli Canada and Goli US.

7.      Furthermore, Goli Canada and Goli US sought the issuance of the following orders:

a)      A reverse vesting order in respect of a transaction involving the transfer of substantially all of Goli Canada's Business and assets, other than certain manufacturing and other equipment (the **Norco Equipment**) located at its facility in Norco, California (the **Norco Facility**) and other excluded assets, to an acquisition group, which includes one of the principal shareholders of Goli Canada (the **Principal Transaction**); and

b)      An order in respect of a transaction resulting from an Agency Agreement (the **Agency Agreement**) concluded with Gordon Brothers Commercial & Industrial, LLC, on behalf of a contractual joint venture between itself and Branford Auctions, LLC, (collectively, the **Agent**) in respect of the Norco Equipment (the **Atos Transaction** and together with the Principal Transaction, the **Transactions**);

8.      On March 16, 2024, the Monitor issued its first report to the Court in its capacity as proposed monitor (the **First Report**).

9.   On March 18, 2024, the Court granted the Initial Application and rendered the Initial Order which provided for, *inter alia*, (i) a stay of proceedings against the Goli Canada, Goli US and the Directors until March 28, 2024; (ii) the appointment of Deloitte as the Monitor under the CCAA; (iii) the granting of the CCAA Charges; and (vi) various other relief.

10.   Shortly following the commencement of the CCAA Proceedings, Goli Canada and Goli US, in consultation with Monitor and the Syndicated Lenders as well as their respective advisors, determined that the approval of the Proposed Transactions should be sought at a later date rather than at the comeback hearing, as originally contemplated in the Initial Application, and a hearing for that purpose was scheduled by the Court for April 9, 2024 (the **Transaction Approval Hearing**).

11.   On March 27, 2024, the Court issued an amended and restated Initial Order, thereby extending the Stay Period until June 28, 2024.

12.   On April 8, 2024, the Monitor issued its second report to the Court (the **Second Report**), the purpose of which was to provide information to the Court on the activities of the Debtors and of the Monitor since the commencement of the CCAA Proceedings and to support the Debtors' request for the issuance of the Transaction Approval Orders.

13.   Late on April 8, 2024, Sharon and Odelya Hoffman and certain related entities, including Vitamin Friends LLC, RGL Management LLC, RGL Holdings LLC, and Triple 5 Nutrition LLC (collectively, the **Hoffman Parties**) filed an opposition to the issuance of the Liquidation Order, on the basis of alleged proprietary rights regarding certain equipment located at the Norco Facility, including certain of the Norco Equipment (the **Alleged RGL Equipment**).

14.   On April 9, 2024, the Transaction Approval Hearing proceeded with respect to the Principal Transaction and the Court rendered an order approving and authorizing the implementation of such transaction (as rectified on April 17, 2024, the **Reverse Vesting Order**).

15.   The Transaction Approval Hearing with respect to Atos Transaction was adjourned and proceeded on April 11, 2024. Despite the Hoffman Parties' objection, the Court issued that same day an order approving and authorizing the implementation of the Atos Transaction (the **Liquidation Order** and together with the Reverse Vesting Order, the **Transaction Approval Orders**) as well as a judgment providing the Court's reasons for rendering the Reverse Vesting Order and the Liquidation Order (the **Approval Judgment**).

16.   Pursuant to the Approval Judgement, the Court scheduled a hearing on April 30, 2024, to adjudicate any claim the Hoffman Parties may assert with regard to the liquidation proceeds resulting form the sale of the Norco Equipment as well as

any related claims of the Monitor, including for the retroactive payment of expenses related to the Norco Equipment (the **Hoffman Hearing**).

17. On April 11, 2024, the Court also amended and restated the Initial Order, whereby it granted the Monitor expanded powers upon the closing of the Principal Transaction and the issuance of the Certificate (as defined in the Reverse Vesting Order).

### B. Developments in the Chapter 15 Case

18. On March 19, 2024, the Monitor, acting as foreign representative of Goli Canada and Goli US in accordance with the Initial Order, commenced proceedings under Chapter 15 of the *United States Bankruptcy Code* (**Chapter 15**) before the United States Bankruptcy Court for the District of Delaware (the **US Court**) seeking, *inter alia*, the recognition of the CCAA Proceedings in the United States of America (the **US**) and the approval of the Transactions (the **Chapter 15 Case**).

19. On March 21, 2024, an initial hearing was held before the US Court to obtain certain preliminary orders in the context of the Chapter 15 Case and on March 22, 2024, the US Court rendered:

   a)  a Joint Administration Order, authorizing the administration of the Goli Canada and Goli US proceedings under Chapter 15 within the same case number;

   b)  a Notice Order approving notification procedures in connection with the Chapter 15 Case; and

   c)  a Provisional Relief Order granting a stay of proceedings and other protections to Goli Canada and Goli US in the US.

20. On April 15, 2024, a hearing before the US Court took place to consider the Monitor's request to recognize and enforce the CCAA Proceedings as well as the other relief sought pursuant to the petitions filed in the Chapter 15 Case (the **Recognition Hearing**). The Monitor simultaneously sought the recognition and enforcement of the Transaction Approval Orders.

21. At the Recognition Hearing, the Hoffman Parties objected to the sale of certain of the Norco Equipment, including items that were not part of the Alleged RGL Equipment identified at the Transaction Approval Hearing, until their alleged rights in such equipment were determined and argued that the US Court rather than this Court had jurisdiction to determine such claims.

22. It is important to note that in the context of the Chapter 15 Case, the Hoffman Parties did not initially object to the sale of the Norco Equipment by the Agent, provided that the US Court retained jurisdiction to determine the allocation of proceeds based on ownership of the such equipment and that the proceeds be

kept in an account in the US. However, in a supplemental objection filed the night before the Recognition Hearing, the Hoffman Parties changed their position and fully objected to the sale until their claims were adjudicated.

23.    On April 18, 2024, the US Court rendered a Bench Ruling (the **Bench Ruling**), indicating that it would it issue orders recognizing and enforcing the CCAA Proceedings and the Reverse Vesting Order in the US.

24.    Pursuant to the Bench Ruling, the US Court also concluded that the ownership issue raised by the Hoffman Parties had to be determined by this Court before the US Court could grant the relief requested in connection with the Atos Transaction and that the issue should be determined at the Hoffman Hearing. As such, the US Court decided to hold the motion to recognize and enforce the Liquidation Order in abeyance until a decision on the alleged ownership rights of the Hoffman Parties is rendered.

25.    That same day the Court rendered an order recognizing and enforcing the CCAA Proceedings as foreign main proceedings under Chapter 15 and giving full force and effect to the Initial Order in the US.

26.    On April 22, 2024, the US Court rendered an order recognizing and enforcing the Reverse Vesting Order in the US.

### C.    Closing of the Principal Transaction

27.    On April 24, 2024, the closing of the Principal Transaction occurred and the Monitor issued the Certificate confirming, *inter alia*, that:

   a)    The Subscription Agreement had been executed and delivered; and

   b)    The Parties to the Subscription Agreement had confirmed to the Monitor that the conditions to closing set forth in the Subscription Agreement had been satisfied or waived by the parties thereto and the closing had occurred.

28.    As such, Residual Co. was added as a debtor in the CCAA Proceedings and Goli Canada was removed as a debtor in the CCAA Proceedings.

29.    Concurrently, upon filing of the Certificate, the Monitor was granted additional powers provided for in the Initial Order, the purpose of which were to allow the Monitor to implement the Atos Transaction, for and on behalf of Residual Co., and to complete any other matters that may have been required in the CCAA Proceedings, the whole as per the terms of the Initial Order.

### D.    The inability to proceed with the Atos Transaction

30.    Pursuant to the Agency Agreement, the Agent was to provide a net minimum guarantee, consisting of an up front cash payment with the balance payable

following the sale of the Norco Equipment, in a total amount of US$5,000,000 (the **Guaranteed Minimum Amount**).

31.   The first installment of the Guaranteed Minimum Amount of US$3,000,000, was to be remitted by the Agent to Residual Co. (after the assignment of the Agency Agreement by Goli Canada under the Reverse Vesting Order) within two business days following the issuance of an order by the US Court recognizing and enforcing the Liquidation Order in the US.

32.   As appears from the cash flow statement attached as Appendix C to the Second Report, the first installment of the Guaranteed Minimum Amount was the sole source of additional funding for the second phase of the contemplated restructuring, being that related to the implementation of the Atos Transaction.

33.   Following the decision of the US Court to defer the motion to recognize and enforce the Liquidation Order until a decision on the alleged ownership rights of the Hoffman Parties was rendered, the Monitor immediately consulted with the Syndicated Lenders and the Debtors and discussions were held with the Hoffman Parties and other stakeholders with a view to identifying a mutually satisfactory solution that would allow for the immediate implementation of the Atos Transaction and the Debtors gaining access to the first installment of the Guaranteed Minimum Amount.

34.   On April 19, 2024, the Hoffman Parties notified a *Motion to Determine Ownership of Property And Other Related Relief* (the **Hoffman Motion**), pursuant to which Sharon Hoffman, RGL Management LLC and Better Nutritionals LLC, alleged proprietary rights over approximately 530 items of Norco Equipment up from the 41 items identified at the Transaction Approval Hearing, as reflected in the list included as part of correspondence filed as Exhibit P-26.

35.   At the same time, the Debtors continued to incur obligations, including in respect of rent for the Norco Facility, the payment of insurance and other costs associated with the preservation of the Norco Equipment, without access to the funding necessary to satisfy such obligations.

36.   Given, in particular, the contested proceedings in Canada and the United States resulting from the contestation of the Hoffman Parties, the parties have also incurred professional fees that are higher than what was initially anticipated.

37.   The Monitor has pursued discussions with the Syndicated Lenders, the Hoffman Parties, the Agent and other stakeholders with a view to identifying a means of gaining access to a portion of the Guaranteed Minimum Amount or finding other solutions to free up the liquidity needed to pursue the second phase of the restructuring process.

38.   However, no viable solution was identified and the Monitor has now ascertained a material adverse change in the Debtors projected cash-flow and financial

circumstances, caused primarily by the impossibility to implement the Atos Transaction within the contemplated timeline, as explained in the Third Report.

39.    Given the expiry of the Agency Agreement on April 19, 2024, the inability to proceed with the Atos Transaction, on the original terms or on alternative acceptable terms, and the absence of other sources of funding, the Debtors are now unable to meet their obligations as they come due or to support the costs associated with the realization of the Norco Equipment in the context of the CCAA Proceedings.

40.    In such circumstances, on April 25, 2024, the Monitor advised the Court and parties on the Service List of the occurrence of the Material Adverse Change and of its intention to seek the termination of the CCAA Proceedings on April 30, 2024 and to not proceed with the adjudication of the Hoffman Parties' claims at the Hoffman Hearing.

## III.    THE RELIEF SOUGHT SHOULD BE GRANTED

### A.    Termination of the CCAA Proceedings

41.    As discussed in the First Report and the Second Report, the Principal Transaction allowed for the preservation of the Business for the general benefit of the stakeholders of Goli Canada and Goli US. The Principal Transaction has been implemented such that the Business will continue under new ownership and has been restructured in accordance with the remedial objectives of the CCAA.

42.    Unfortunately, the second phase of the restructuring contemplated in the CCAA Proceedings, being the realization of the Norco Equipment for the benefit of the Debtors' creditors, no longer appears feasible in the context of the CCAA Proceedings, given the costs associated with maintaining such proceedings, the Debtors' existing and contemplated obligations and the absence of available interim funding.

43.    As mentioned above, without receiving payment of the first installment of the Guaranteed Minimum Amount, the Debtors do not have the required liquidity to pursue the realization of the Norco Equipment in the context of the CCAA Proceedings.

44.    The Monitor therefore submits that the continuation of the CCAA Proceedings is no longer viable and that the termination of the CCAA Proceedings at this time is necessary and appropriate in the circumstances.

45.    Pursuant to the Proposed Termination Order, Residual Co. and Goli US will emerge from CCAA protection as of the date of the proposed order (the **CCAA Termination Date**) and the Hoffman Motion will be struck, without prejudice to the parties.

46.     This will allow any parties with interests in the Norco Equipment, including the Hoffman Parties, the Syndicated Lenders, and others to exercise their rights and remedies as against Residual Co. in accordance with the ordinarily applicable procedures thus preserving the *status quo* with respect to the Norco Equipment.

### B.   Discharge of the Monitor and Release

47.     The Proposed Termination Order also contemplates, *inter alia,* that effective as of the CCAA Termination Date, Deloitte Restructuring Inc. will be discharged in its capacity as Monitor, though it will continue to benefit from all protections afforded to it in that capacity by, in particular, the CCAA and the previous orders of this Court. The Monitor will also be fully released from any and all liability in any way relating to, arising out of, or in respect of the CCAA Proceedings and the Chapter 15 Case.

48.     It is respectfully submitted that the Monitor has, in good faith, duly and properly discharged and performed its duties and obligations in the CCAA Proceedings in accordance with the CCAA and all of the orders of this Court made in the CCAA Proceedings.

49.     Consequently, the Monitor submits that it is appropriate, fair and reasonable for the Monitor and its counsel to be released.

### C.   Termination of the Chapter 15 Case

50.     The Monitor, in its capacity as foreign representative of the Debtors also intends to apply to the US Court for an order terminating the Chapter 15 Case in respect of Residual Co. and Goli US and recognizing and enforcing the Proposed Termination Order in the US, provided it is granted by this Court.

## IV.   CONCLUSION

51.     For the reasons set out herein, the Monitor respectfully submits that the relief sought in this Application should be granted and an order substantially in the form of the Proposed Termination Order should be issued.

**FOR THESE REASONS, MAY IT PLEASE THE COURT:**

   **GRANT** the present *Application to Terminate the CCAA Proceedings and Discharge the Monitor* (the **Application**);

**RENDER** an order substantially in the form of the Proposed Termination Order communicated in support of the Application as Exhibit R-1.

**THE WHOLE** without legal costs, save in the event of contestation.

Montréal, April 26, 2024

*Norton Rose Fulbright Canada LLP*

_____

**NORTON ROSE FULBRIGHT CANADA LLP**
M^tres Noah Zucker and Charlotte Dion
**Attorneys for Deloitte Restructuring Inc.**

1 Place Ville Marie, Suite 2500
Montreal, Québec H3B 1R1
Telephone: 514.847.6076 / 514.847.4650
Fax: 514.286.5474
mailto:noah.zucker@nortonrosefulbright.com
charlotte.dion@nortonrosefulbright.com
notifications-mtl@nortonrosefulbright.com
Our reference: 1001258884

## AFFIDAVIT

I, the undersigned, Benoit Clouâtre, CPA, CIRP, LIT, having my professional address at 1190 avenue des Canadiens-de-Montréal, Suite 500, Montréal, province of Québec, H3B 0M7, district of Montreal, solemnly declare the following:

1.      I am an authorized representative of Deloitte Restructuring Inc., acting in its capacity as court-appointed Monitor of the Debtors;

2.      I have read the attached *Application to Terminate the CCAA Proceedings and Discharge the Monitor* and all facts contained therein are true.

AND I HAVE SIGNED
in Nosara, Costa Rica, on April 26, 2024

**BENOIT CLOUÂTRE**

Solemnly affirmed before me by videoconference (Teams), in Montréal and in in Nosara, Costa Rica, on April 26, 2024 allowing me to recognize Benoit Clouâtre, as well as confirm that he has signed this Affidavit. The Affidavit sent by email is true.

Commissioner of Oaths for the Province of Québec

10

# NOTICE OF PRESENTATION
## COMMERCIAL DIVISION

To:        **THE SERVICE LIST (See attached)**

**TAKE NOTICE** that the *Application to terminate the CCAA Proceedings and Discharge the Monitor* will be presented for adjudication before the Honorable Martin F. Sheehan, J.S.C., of the Commercial Division of the Superior Court of Québec, in **room 16.07**, of the Montréal Courthouse, on **April 30, 2024**, **at 9:15 a.m.**

**DO GOVERN YOURSELF ACCORDINGLY.**

Montréal, April 26, 2024

*Norton Rose Fulbright Canada LLP*

_____

**NORTON ROSE FULBRIGHT CANADA LLP**
M^tres Noah Zucker and Charlotte Dion
**Attorneys for Deloitte Restructuring Inc.**

1 Place Ville Marie, Suite 2500
Montreal, Québec H3B 1R1
Telephone: 514.847.6076 / 514.847.4650
Fax: 514.286.5474
mailto:noah.zucker@nortonrosefulbright.com
charlotte.dion@nortonrosefulbright.com
notifications-mtl@nortonrosefulbright.com
Our reference: 1001258884

**CANADA**
**PROVINCE OF QUÉBEC**
**DISTRICT OF MONTRÉAL**

**S U P E R I O R   C O U R T**
(Commercial Division)

(Sitting as a court designated pursuant to
the *Companies' Creditors Arrangement Act*,
RSC 1985, c. C-36)

No.:   500-11-063787-242

**IN THE MATTER OF THE COMPROMISE
OR ARRANGEMENT OF:**

**GOLI NUTRITION INC.**

-and-

**GOLI NUTRITION INC.**

Debtors

**DELOITTE RESTRUCTURING INC.**

Monitor/Applicant

**LIST OF EXHIBITS**

---

**EXHIBIT R-1:**     Proposed Termination Order

Montréal, April 26, 2024

*Norton Rose Fulbright Canada LLP*

---

**NORTON ROSE FULBRIGHT CANADA LLP**
M^tres Noah Zucker and Charlotte Dion
**Attorneys for Deloitte Restructuring Inc.**

1 Place Ville Marie, Suite 2500
Montreal, Québec H3B 1R1
Telephone: 514.847.6076 / 514.847.4650
Fax: 514.286.5474
mailto:noah.zucker@nortonrosefulbright.com
charlotte.dion@nortonrosefulbright.com
notifications-mtl@nortonrosefulbright.com
Our reference: 1001258884

**NO.:    500-11-063787-242**

**SUPERIOR COURT**

**DISTRICT OF MONTRÉAL**

In the matter of the compromise or arrangement of:

**15938759 CANADA INC. (RESIDUAL CO.)**

and

**GOLI NUTRITION INC.**

Debtors

**DELOITTE RESTRUCTURING INC.**

Monitor/Applicant

**APPLICATION TO TERMINATE THE CCAA PROCEEDINGS AND DISCHARGE THE MONITOR**

**ORIGINAL**

Erreur ! Insertion automatique non définie. # 1001258884

Mtres **Noah Zucker, Charlotte Dion**
**NORTON ROSE FULBRIGHT CANADA** LLP
BARRISTERS & SOLICITORS

1 Place Ville Marie, Suite 2500
Montréal, Quebec  H3B 1R1
Telephone: 514.847.4747
Fax: 514.286.5474

noah.zucker@nortonrosefulbright.com
charlotte.dion@nortonrosefulbright.com
Notifications-mtl@nortonrosefulbright.com

**Exhibit C**

# SUPERIOR COURT

(Commercial Division)

CANADA
PROVINCE OF QUEBEC
DISTRICT OF MONTREAL

No.:    500-11-063787-242

DATE:  April 30, 2024

---

**BY  THE HONOURABLE  MARTIN F. SHEEHAN, J.S.C.**

---

**IN THE MATTER OF THE PLAN OF COMPROMISE OR ARRANGEMENT OF:**

**GOLI NUTRITION INC.**
and
**GOLI NUTRITION INC.**
        Applicants/Debtors

and
**DELOITTE RESTRUCTURING INC.**
        Monitor

---

**ORDER TERMINATING THE CCAA PROCEEDINGS
AND DISCHARGING THE MONITOR**

---

[1]    Applicant, Deloitte Restructuring Inc. ("**Deloitte**" or the "**Monitor**"), acting for and on behalf of Residual Co. and Goli Nutrition Inc. ("**Goli US**", and together with Residual Co., the "**Debtors**") seek an Order to terminate the present proceedings (the "**CCAA Proceedings**")

JS1699

**CONTEXT**

[2]    On March 18, 2024, the undersigned issued a First Day Initial Order pursuant to the *Companies' Creditors Arrangement Act*,[1] (the "**CCAA**") which was subsequently amended on March 27, 2024 (the "**Initial Order**")[2].

[3]    The Initial Order provides for:

    3.1.    a stay of all proceedings (the "**Stay**") against Debtors, Goli Nutrition Inc. ("**Goli Canada**") and Goli USA (collectively with Goli Canada "**Goli**") and their respective past, present or future directors and officers until March 28, 2024 (the "**Stay Period**");

    3.2.    the appointment of Deloitte as monitor of the Debtors in the CCAA proceedings and granting the Monitor certain powers;

    3.3.    an Administration Charge and a D&O Charge in amounts sufficient to cover the potential exposure of the beneficiaries of such charges for the initial Stay Period;

    3.4.    a declaration that Québec is the "center of main interest" of the Debtors and, accordingly, an authorization that the Applicants or the Monitor may apply to the Bankruptcy Court for the state of Delaware (the "**US Court**") for orders to recognize and/or assist in carrying out the terms of the Initial Order under Chapter 15 of the United States Bankruptcy Code 11 U.S.C. §§ 101-1532 (the "**U.S. Bankruptcy Code**").

[4]    In its application for the Initial Order, Debtors indicated that they would be proposing a transaction (the "**Contemplated Transaction**") which has two components:

    4.1.    The execution by Goli Canada of an Agency Agreement (the "**Agency Agreement**") with Gordon Brothers Commercial & Industrial, LLC (on behalf of its contractual joint venture with Brandford Auctions, LLC) (the "**Agent**") pursuant to which the Agent shall be engaged for the purpose of proceeding with the orderly liquidation of the Atos Equipment located in the Norco Facility in California (the "**Atos Transaction**" to be approved by way of a "**Liquidation Order**"). Under the Agency Agreement, the Agent provides a minimum net guarantee (the "**Guaranteed Minimum Amount**") consisting of an upfront cash payment with the balance of the Guaranteed Minimum Amount payable following the sale of the Atos Equipment. Any excess balance over the Guaranteed Minimum Amount would be shared between the Agent and the Debtors according to the terms of the Agency Agreement.

---

[1]    *Companies' Creditors Arrangement Act*, R.S.C. 1985, C-36.

[2]    *Arrangement relatif à Goli Nutrition Inc.*, 2024 QCCS 869. Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Initial Order.

4.2.  A reverse vesting order (the "**RVO**" or the "**Principal Transaction**"), comprising of:

    4.2.1.  the subscription of shares in Goli Canada by a group that includes Group KPS (a healthcare company), Bastion Capital (an investment management firm) and one of the Debtors' founders (the "**Purchaser**") and effectively acquire 100% of the equity interest in GOLI Canada.

    4.2.2.  a transfer or vesting out of Goli Canada of certain excluded assets (including the Atos Equipment and the shares of Goli US), contracts and liabilities to a newly created residual company ("**Residual Co.**") that would replace Goli Canada as a debtor in the CCAA proceedings.

    (the Liquidation Order and the RVO are collectively referred to as the "**Transaction Approval Orders**")

[5]  On March 22, 2024, the US Court rendered:

5.1.  a Joint Administration Order, authorizing the administration of the Goli Canada and Goli US proceedings under Chapter 15 within the same case number;

5.2.  a Notice Order approving notification procedure in connection with the Chapter 15 Case; and

5.3.  a Provisional Relief Order granting a stay of proceedings and other protections to Goli Canada and Goli US in the US.

[6]  On March 27, 2024, the Court issued an amended and restated Initial Order and extended the Stay Period until June 28, 2024 and increasing the Administration Charge.

[7]  The comeback hearing to approve the Contemplated Transaction was scheduled for April 9, 2024 (the "**Transaction Approval Hearing**").

[8]  The Contemplated Transaction was designed in consultation with the Monitor following a sale investment solicitation process ("**SISP**") that began in June 2023 and ended in January 2014. It involved the Debtors (via the active involvement of the Debtors' founders and their broader management team), BMO Capital Markets and Goli's principal lenders (the "**Lenders**"). Deloitte acted as a consultant to the Lenders. The SISP process is described in more detail in this Court's prior ruling on the Initial Order as well as in the Monitor's first report dated March 16, 2024 (the "**First Report**").

[9]  The SISP failed to generate a binding offer. Five non-binding offers were received but none of these allowed for the repayment in full of the Lenders. All indications of interest only contemplated a partial repayment or a partial assumption of the Lenders' secured debt.

[10]  Eventually the Purchaser submitted an offer for an amount well below the amount owed to the Lenders. After further negotiations, the Contemplated Transaction was reached which is now supported by the Lenders.

[11]  On April 8, 2024, the Monitor issued its second report to the Court (the "**Second Report**"), supporting the Debtors' request for the issuance of the Transaction Approval Orders.

[12]  April 8, 2024, Sharon and Odelya Hoffman and certain related entities, including Vitamin Friends LLC, RGL Management LLC, RGL Holdings LLC, and Triple 5 Nutrition LLC (collectively, the "**Hoffman Parties**") filed an opposition to the issuance of the Liquidation Order, alleging proprietary rights in part of the Atos Equipment (the "**Alleged RGL Equipment**").

[13]  On April 9, 2024, the Transaction Approval Hearing proceeded, and the Court issued the RVO with reasons to follow. The Transaction Approval Hearing with respect to Liquidation Order was postponed to April 11, 2024. That day, despite the Hoffman Parties' objection, the Court issued an order approving the Liquidation Order and issued its reasons for the RVO and the Liquidation Order (the "**Transaction Approval Judgment**").

[14]  Pursuant to the Transaction Approval Judgment, the Court scheduled a hearing on April 30, 2024, to adjudicate any claim the Hoffman Parties may assert regarding the liquidation proceeds resulting from the sale of the Atos Equipment as well as any related claims of the Monitor, including for the retroactive payment of expenses related to the Atos Equipment (the "**Hoffman Hearing**"). At the same time, the Court amended and restated the Initial Order to grant the Monitor additional powers upon the closing of the Principal Transaction to implement the Atos Transaction.

[15]  On April 15, 2024, the Monitor sought the recognition and enforcement of the Transaction Approval Orders before the US Court (the "**Recognition Hearing**"). At the Recognition Hearing, the Hoffman Parties objected to the sale of part of the Atos Equipment, including additional items not initially identified as Alleged RGL Equipment. They argued that their claim for proprietary rights in the Alleged RGL Equipment should be determined by the US Court.

[16]  On April 18, 2024, the US Court rendered a Bench Ruling (the "**Bench Ruling**") with reasons following on April 22, 2024, recognizing and enforcing the CCAA Proceedings as foreign main proceedings under Chapter 15 thus giving full force and effect to the Initial Order and the RVO in the US. However, the US Court concluded that the Hoffman Parties' proprietary claims should be determined by this Court before the US Court could approve the Liquidation Order. In essence, the US Court decided that the motion to recognize and enforce the Liquidation Order should be held in abeyance until a decision could be rendered on the ownership claims of the Hoffman Parties. As a hearing had already been scheduled in Canada for April 30, 2024, it agreed that the matter could be dealt with by this Court.

[17]  On April 19, 2024, the Hoffman Parties notified their application asserting proprietary claims over the Alleged RGL Equipment. They alleged proprietary rights over approximately 533 items of Atos Equipment up from the 41 items identified at the Transaction Approval Hearing.

[18]  The Principal Transaction closed on April 24, 2024. Residual Co. replaced Goli Canada in the CCAA Proceedings.

[19]  As indicated in the Monitor's cash flow forecasts annexed to the First and Second Reports, the Agency Agreement (and specifically the payment of the Guaranteed Minimum Amount) was the principal source of funding for the second phase of the restructuring. Indeed, Goli Canada's revenue-generating activities have been transferred to the Purchaser as part of the RVO.

[20]  In the absence of an order enforcing the Liquidation Order in the United States, the Debtors were not able to access this funding. Thus, they are incurring expenses related to the Atos Equipment (including rent for the Norco Facility and insurance, the "**Atos Expenses**") without having the financial capacity to pay for them.

[21]  Discussions between the Hoffman Parties, the Lenders and the Debtors to reach an agreement, were not fruitful. No other financing alternative has been identified which would allow the Debtors to pay the Atos Expenses and the professionals involved in the CCAA Proceedings. Given the Hoffman Parties' contestation in Canada and the United States, these professional expenses are higher than what was initially anticipated.

[22]  The Agency Agreement was conditional on the issuance of the Liquidation Order as well as an order in a form satisfactory to the parties recognizing and enforcing such order in the US prior to April 19, 2024. This condition was not met and thus the Agency Agreement is now expired. In any event, the Lenders, who were most susceptible to benefit from the Atos Transaction are no longer willing to finance the process to have it approved.

[23]  The Debtors are now unable to meet their obligations as they come due or to support the costs associated with the realization of the Atos Equipment in the context of the CCAA CCAA Proceedings. Unpaid Atos Expenses exceed 187 000 $.

[24]  On April 25, 2024, the Monitor advised the Court and parties on the Service List that it intended to seek the termination of the CCAA Proceedings on April 30, 2024, and that it did not intend to proceed with the adjudication of the Hoffman Parties' claims at the Hoffman Hearing.

## ANALYSIS

[25]  The conclusion of the Principal Transaction allows the preservation of Goli's activities for the general benefit of the stakeholders.

[26]  However, the second phase of the Contemplated Transaction regarding the realization of the Atos Equipment no longer appears feasible given the Atos Expenses, the costs associated with maintaining the CCAA Proceedings and the absence of available interim funding.

[27]  The Court agrees with the Monitor that, under such circumstances, the continuation of the CCAA Proceedings is no longer viable.

[28]  The application was notified to the Service List. No one has contested the relief sought. Goli US, Residual Co. and the Lenders support the application.

[29]  Thus, an order to terminate the CCAA Proceedings is appropriate.

[30]  As such, Residual Co. and Goli US will emerge from CCAA protection as of the date of this order (the "**CCAA Termination Date**"). The Hoffman Parties' motion will be struck, without prejudice.

[31]  While, the Hoffman Parties' claims remain contested by Goli, Residual Co. and the Lenders, the removal of the protections included in the Initial Order will allow any parties with interests in the Atos Equipment, including the Hoffman Parties, the Lenders, or others to exercise their rights and remedies as against Residual Co. in accordance with applicable procedures.

[32]  The D&O Charge should be released as of the CCAA Termination Date. The Administration Charge should be released upon filing of a certificate by Deloitte confirming that beneficiaries of the charge have been paid.

[33]  The Monitor also seeks confirmation that, effective as of the CCAA Termination Date, Deloitte will be discharged in its capacity as Monitor but will continue to benefit from the protections afforded to it by the CCAA and previous orders of this Court. Such an order is warranted here.

[34]  Finally, the Monitor asks that it and its counsel be fully released from all liability in connection with its role in the CCAA Proceedings. The proposed terms of the releases are somewhat broad.

[35]  The Court has no reason to doubt that the Monitor has, in good faith, duly and properly discharged and performed its duties and obligations in the CCAA Proceedings.

[36]  This being said, it is difficult for this Court to grant a release: i) for actions or factual circumstances that the Court is not aware of; or ii) which would bind parties who have not had a chance to make their position known as potential issues remain unknown to them.

[37]  The Initial Order already provides that "no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor, or the

carrying out the provisions of any order of this Court, except with prior leave of this Court". The present order maintains this protection.

[38]  Furthermore, the Monitor's Reports as well as actions and conduct of the Monitor in connection with the CCAA Proceedings have been approved.

[39]  Finally, the Monitor already benefits from certain specific statutory releases under the CCAA[3] including for loss or damage resulting from reliance by others on its reports prepared in good faith with reasonable care.

[40]  As Justice Shrager observed in *Aveos* (when he was at the Superior Court), it should not, as a matter of policy, be viewed "as a negative that professionals such as a monitor know that they are potentially liable for negligent acts. While the vast majority of monitors behave in a professional and prudent matter, the deterrence of potential liability is a great motivation to continue such professional and prudent conduct"[4].

[41]  In any event, as some authors have noted, the "potential for liability of a monitor appears to be very limited within the CCAA framework. While the *Aveos* decision may suggest that there remains a limited exposure to potential proceedings against a monitor after a proper discharge has been granted, past experience would indicate that this risk may well be only hypothetical."[5]

[42]  Nonetheless, third-party releases in favor of monitors and their professional advisors have been approved by this court in other cases involving RVO transactions.[6]

[43]  As such, a release will be granted but it will be limited to actions approved by this Court.

**FOR THESE REASONS, THE COURT:**

[44]  **GRANTS** the Application.

[45]  **STRIKES** the Hoffman Parties' Motion to Determine Ownership of Property and other Related Relief, without prejudice;

---

[3]  See for example sections 11.8(1), 11.8(2) and 23(2) of the CCAA.

[4]  *Aveos Fleet Performance Inc./Aveos Performance aéronautique inc. (Arrangement relatif à)*, 2013 QCCS 5924, para. 34.

[5]  Sylvain RIGAUD and Toni VANDERLAAN, "Much ado about nothing: the AVEOS decision on discharge of CCAA monitors", (2013-2014) 26 Comm. Insolv. R. 40-44 at p. 43.

[6]  *Arrangement relatif à Blackrock Metals Inc.*, 2022 QCCS 2828, para. 128.

## SERVICE

[46] **ORDERS** that any prior delay for the presentation of this Application is hereby abridged and validated so that the Application is properly returnable today and **DISPENSES** with further service thereof.

[47] **PERMITS** the service of this Order at any time and place and by any means whatsoever.

## DEFINITIONS

[48] **DECLARES** that, unless otherwise indicated, capitalized terms found herein shall have the meanings ascribed thereto in the Initial Order.

## TERMINATION OF CCAA PROCEEDINGS

[49] **ORDERS** that as of the date of this Order, the CCAA Proceedings shall be terminated without any other act or formality (the "**CCAA Termination Date**"), save and except as provided for in this Order, and provided that nothing herein impacts the validity of any Orders made in the CCAA Proceedings or any actions or steps taken by any Person.

[50] **AUTHORIZES** the Monitor, following the CCAA Termination Date, to disburse the Professional Costs Budget Amount (as defined in the Subscription Agreement) to pay outstanding professional or other fees, expenses and disbursements incurred by the Monitor, the Monitor's counsel and the Syndicated Lenders' counsel in connection with the CCAA Proceedings and the proceedings under the Chapter 15 of the U.S. Bankruptcy Code with regard to the Debtors (the "**Chapter 15 Case**"), the whole in accordance with the Subscription Agreement.

## CCAA CHARGES

[51] **ORDERS** that, as of the CCAA Termination Date, the Directors' Charge, be terminated, discharged and released as against any Property to which it applies without any further formality and that the Administration Charge shall remain in full force and effect until terminated, discharged and released in accordance with this Order.

[52] **ORDERS** that upon the issuance of a certificate substantially in the form attached to this Order as Schedule "A" (the "**Discharge Certificate**"), to be issued once the beneficiaries of the Administration Charge have been fully paid the amounts secured by such CCAA Charge, the Administration Charge shall be terminated, discharged and released as against any Property to which it applies without any further formality.

## CONDUCT AND DISCHARGE OF THE MONITOR

[53]  **DECLARES** that, to the Court's knowledge, the Monitor has satisfied all of its obligations under the CCAA and the Orders rendered in the CCAA Proceedings up to and including the date of this Order.

[54]  **ORDERS** that all of the Monitor's reports filed with this Court (the "**Monitor's Reports**") be and are hereby approved that all actions and conduct of the Monitor in connection with Goli and the Debtors (the "**CCAA Parties**") and the CCAA Proceedings, including the actions and conduct of the Monitor disclosed in the Monitor's Reports, are hereby approved.

[55]  **DISPENSES** the Monitor from filing any further reports, including any reports which may be required by section 23 of the CCAA.

[56]  **DECLARES** that the protections afforded to Deloitte Restructuring Inc. ("**Deloitte**"), as Monitor and as officer of this Court pursuant to the terms of the Initial Order and any other Orders made in the CCAA Proceedings shall not expire or terminate on the CCAA Termination Date and, subject to the terms hereof, shall remain effective and in full force and effect.

[57]  **ORDERS** that effective at the CCAA Termination Date, Deloitte shall be discharged and relieved from any further obligations, liabilities, responsibilities and duties, in its capacity as Monitor of the CCAA Parties under the CCAA and the orders made in the CCAA Proceedings, and that Deloitte shall have no further obligations, responsibilities or duties as Monitor from and after the CCAA Termination Date.

[58]  **ORDERS** that, notwithstanding the discharge of Deloitte as Monitor, Deloitte shall have the authority but not the obligation to carry out, complete or address any matters in the capacity of Monitor that are contemplated in this Order or ancillary or incidental to the CCAA Proceedings following the CCAA Termination Date, as may be required in the opinion of the Deloitte.

[59]  **ORDERS** that, notwithstanding the Monitor's discharge and the termination of the CCAA Proceedings, nothing herein shall affect, vary, derogate from, limit or amend any of the rights, approvals, releases and protections afforded to Deloitte pursuant to the CCAA, at law and/or under all Orders made in the CCAA Proceedings and that Deloitte shall continue to benefit from any such rights, approvals, releases, and protections, including in connection with any actions taken pursuant to this Order following the CCAA Termination Date.

## RELEASE

[60]  **ORDERS** that as of the CCAA Termination Date the Monitor and its legal counsel are released from any and all liability arising out of actions performed in furtherance of Orders of this Court in connection with the CCAA Proceedings. Entities and persons

related to the Monitor or belonging to the same group as the Monitor will also benefit from the protection afforded by this paragraph.

## AGENCY AGREEMENT

[61] **DECLARES** that the Agency Agreement among Gordon Brothers Commercial & Industrial, LLC (on behalf of its contractual joint venture with Branford Auctions, LLC) and GOLI Canada, with the intervention of GOLI USA, approved pursuant to the Liquidation Order rendered by this Court in these proceedings on April 11, 2024, is terminated as the conditions precedent were not satisfied on or before April 19, 2024.

## GENERAL PROVISIONS

[62] **DECLARES** that this Order shall have full force and effect in all provinces and territories in Canada and that all Orders made in the CCAA Proceedings shall continue in full force and effect in accordance with their respective terms, except to the extent that such Orders are varied by, or inconsistent with, this Order or any further Order of this Court.

[63] **ORDERS** that Deloitte may apply to this Court for advice and direction in connection with this Order and, as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement this Order.

[64] **REQUESTS** the aid and recognition of any court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America, including the United States Bankruptcy Court for the District of Delaware, and any court or administrative body elsewhere, to act in aid and to be complementary to this Court in carrying out the terms of the Order.

[65] **AUTHORIZES** Deloitte, in its capacity as foreign representative of the Debtors and notwithstanding the termination of the CCAA Proceedings, to apply for (i) the recognition and enforcement of this Order in the United States of America, including in the Chapter 15 Case, as well as (ii) for an order of termination of the Chapter 15 Case.

[66] **ORDERS** the provisional execution of the present Order notwithstanding any appeal and without the requirement to provide any security or provision for costs whatsoever.

[67] **THE WHOLE** without costs.

_____
MARTIN F. SHEEHAN, J.S.C.

Mtre Christian Lachance
**DAVIES WARD PHILLIPS & VINEBERG LLP**
Attorneys for the Debtors

Mtre Noah Zucker
Mtre Charlotte Dion
**NORTON ROSE FULBRIGHT CANADA S.E.N.C.R.L.,S.R.L.**
Attorneys for the Monitor

Mtre Ilia Kravtsov
**OSLER, HOSKIN & HARCOURT LLP**
Attorneys for the Lenders

Mtre Jonathan Bashir-Legault
Attorney for the Canadian Revenue Agency

Mtre Nick Scheib
Attorney for Mr. Michael Betinsky

Mtre Joshua Bouzaglou
**WOODS LLP**
Attorneys for the Hoffman Parties

Mtre Mélanie Martel
**DLA PIPER (CANADA) LLP**
Attorneys for DLA Piper (US) LLP

Mtre François Alexandre Toupin
**MCCARTHY TÉTRAULT S.E.N.C.R.L., S.R.L.**
Attorneys for Saddle Ranch APG LLC

Hearing date:          April 30, 2024

500-11-063787-242                                               PAGE: 12

**SCHEDULE "A"**
**DRAFT CERTIFICATE OF THE MONITOR**

| | |
|---|---|
| **CANADA**<br>**PROVINCE OF QUEBEC**<br>**DISTRICT OF MONTRÉAL**<br><br>**File: No: 500-11-063707-242** | **S U P E R I O R  C O U R T**<br>Commercial Division<br><br>**15938759 CANADA INC. (RESIDUAL CO.)**<br><br>-and-<br><br>**GOLI NUTRITION INC.**<br>Debtors<br><br>-and-<br><br>**DELOITTE RESTRUCTURING INC.**<br>Monitor |

**CERTIFICATE OF THE MONITOR**

**RECITALS:**

**WHEREAS** the Superior Court of Québec (Commercial Division) (the **Court**) issued an Initial Order rendered by this Court on March 18, 2024, as amended and restated on March 27 and April 11, 2024 (the "**Initial Order**");

**WHEREAS** the Court issued an Order dated April 30, 2024, among other things, (i) terminating the CCAA Proceedings; (ii) approving the Monitor's activities and (iii) discharging and releasing the Monitor from its duties and obligations in relation to the CCAA Proceedings.

**WHEREAS** unless otherwise indicated, capitalized terms used herein have the meanings given in the Initial Order.

**THE MONITOR CERTIFIES THE FOLLOWING:**

(a)    The beneficiaries of the Administration Charge have confirmed to the Monitor that all amounts owed to them that are secured by the Administration Charge have been paid in full.

**(b)**    This Certificate was issued by the Monitor at _____ **[TIME]** on _____ **[DATE].**

Deloitte Restructuring Inc. in its capacity as Court-appointed Monitor, and not in its personal capacity.

**Name:**

_____

**Title:**

_____